IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES W. MURROW,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF<br>SOCIAL SECURITY<br>ADMINISTRATION,<br><br>　　　　Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>CIVIL NO. 06-1248<br><br>**OPINION** |

APPEARANCES:

Alan H. Polonsky, Esquire
POLONSKY & POLONKSY
512 S. White Horse Pike
Audubon, NJ 08106
　　Attorney for Plaintiff

Christopher J. Christie
United States Attorney
　　By:  Susan Reiss
　　　　Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
　　Attorneys for Defendant

**SIMANDLE**, District Judge:

　　This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (2006), to review the final decision of the Commissioner of the Social Security Administration denying the application of Plaintiff, James W. Murrow, for Disability Insurance Benefits

under Title II of the Social Security Act.  See 42 U.S.C. §§ 401-34 (2006).

At issue in this case is whether the ALJ properly determined that James W. Murrow ("Plaintiff") was not entitled to disability insurance benefits prior to July 31, 2003.  On June 20, 2002, Plaintiff was fired from his job due to inappropriate conduct, which he alleges resulted from a mental disability.  (Pl. Br. at 4.)  Plaintiff filed for disability insurance benefits, alleging an onset date of June 20, 2002.  (R. at 53-55.)  Based on the medical evidence available in the record, the ALJ determined Plaintiff's mental disorders did not rise to the level of severity required for a disability until July 31, 2003, when Plaintiff was hospitalized for a panic attack.

In reviewing the decision of the Administrative Law Judge ("ALJ"), this Court must determine for the period between June 20, 2002 and July 31, 2003: (1) whether the ALJ was required to utilize a medical expert to determine the onset date of Plaintiff's disability, and (2) whether the ALJ properly determined Plaintiff's mental impairments were "non-severe."  For the reasons stated below, this Court will vacate the decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits and remand for further proceedings consistent with this opinion.

**I. Appreciable Standards**

 A. <u>Standard for Judicial Review</u>

 Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a claimant's application for Disability Insurance Benefits.  See <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence means more than "a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).  Indeed, the "substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."  <u>Shaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999).

 A reviewing court has a duty to review the evidence in its totality.  See <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly

detracts from [a particular piece of evidence's] weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951))).

The Commissioner "must adequately explain in the record [the] reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held an Administrative Law Judge "must review all pertinent medical evidence and explain [any] conciliations and rejections."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence presented.  See id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)).

The Third Circuit has held access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citing Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).

4

A district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). However, an ALJ need not explicitly discuss every piece of relevant evidence in his or her decision. See Fargnoli, 247 F.3d at 42.

Moreover, apart from the substantial evidence inquiry, a reviewing court is required to satisfy itself that the Commissioner arrived at a decision by application of the proper legal standards. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983) (stating that courts should examine the legal standard applied by the agency because "the judiciary is the final interpreter of the Social Security Act").

B.   Standard for Disability Insurance Benefits

The Social Security Act defines "disability" for purposes of an entitlement to Disability Insurance Benefits ("DIB") as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). Under this definition, "a claimant qualifies as disabled only if [that claimant's] physical or mental impairments are of such

severity that [the claimant] is not only unable to do his [or her] previous work, but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 1382c(a)(3)(B) (2006).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  20 C.F.R. § 404.1520 (2006).  This five-step process is summarized as follows:

1. If currently is engaged in substantial gainful employment, the claimant will be found "not disabled."

2. If not suffering from a "severe impairment," the claimant will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If able to still perform work done in the past despite the severe impairment, the claimant will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work, age, education, and past work experience to determine whether or not the claimant is capable of performing other work which exists in the national economy.  If incapable, the claimant will be found "disabled."  If capable, the claimant will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).

Entitlement to benefits is therefore dependent upon finding the claimant is incapable of performing work in the national

economy.

This five-step process involves a shifting burden of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. Id. In the final step, the Commissioner bears the burden of proving that work is available for the claimant: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987) (citing Chicager v. Califano, 574 F.2d 161 (3d Cir. 1978)).

## II. Background

### A. Procedural History

Plaintiff filed his application for Disability Insurance Benefits on July 31, 2003 with a stated onset date of June 20, 2002. (R. at 53-55.) The plaintiff alleged disability due to coronary artery disease and various mental conditions, including depression, anxiety, panic attacks, agoraphobia[1], and paranoia.

---

[1] Agoraphobia is the "intense, irrational fear of open spaces," which is "characterized by marked fear of being alone . . .and by avoidance of such situations to a degree that limits normal activities, e.g., an agoraphobic may remain at home unless in the company of a friend or relative; in some cases anticipation of exposure to the public situation brings on panic attacks." Richard Sloane, Sloane-Dorland Annotated Medical-

(R. at 67.)  The Social Security Administration ("SSA") found Plaintiff was disabled, but that his onset date was July 31, 2003, a year later than Plaintiff's alleged onset date of June 20, 2002.  (R. at 22-26.)  On reconsideration, the SSA confirmed its calculation of Plaintiff's onset date as July 31, 2003.  (R. at 30-33.)  The plaintiff then filed a Request for Hearing on September 15, 2004 (R. at 34-35), which was held on August 8, 2005.  (R. at 230-47.)  The Administrative Law Judge ("ALJ"), Daniel W. Shoemaker Jr., concluded Plaintiff's mental conditions were non-severe and Plaintiff was not disabled prior to July 31, 2003.  (R. at 11-20.)  Plaintiff then requested a review by the Appeals Council, which was denied on February 16, 2006.  (R. at 5-8.)  Thereafter, on March 17, 2006, the Plaintiff filed the present action.

  B. Evidence in the Record

    1. Plaintiff's Testimony

Plaintiff is a resident of Barrington, New Jersey who was fifty-nine years old at the time of the administrative hearing in 2005.  (R. at 235.)  Plaintiff did not graduate from high school, but has earned a GED.  (Id.)  At the time of the hearing, Plaintiff was married and still lived with his wife.  (R. at 236.)  Plaintiff does not have a current driver's license, having let his license expire because he doesn't "trust [him]self" due

---

Legal Dictionary 9 (Supp. 1992).

to periods of forgetfulness and blackouts.  (R. at 237-38.) Plaintiff added that he is "scared to death to drive" and started avoiding driving in 2002.  (R. at 238.)

Additionally, Plaintiff testified to his agoraphobia.  He explained that he is "scared to death" to leave his apartment, which he refers to as his "cage".  (Id.)  If he had it his way, Plaintiff testified that he would never leave the apartment. (Id.)  Other than going to work, Plaintiff explained he stayed in his apartment "all the time" since 2001.  (Id.)

Plaintiff testified that he last worked in 2002, when he was fired from two jobs due to inappropriate behavior.  (R. at 239.) Plaintiff explained that he was fired from his first job in 2002 after being told his conduct was not appropriate.  (Id.) Plaintiff explained he was convinced everyone that he worked with was crazy and Plaintiff acted out as a result: "banging on the walls with [his] fists," throwing things, crying for no reason, and "screaming at the top of [his] lungs".  (R. at 239-40.)

After he was fired, Plaintiff accepted a similar position with Sunset Memorial Park.  (Id.)  However, Plaintiff was fired one week into the second job due to his erratic behavior.  (R. at 240-41.)  Specifically, Plaintiff testified that he was scared and had no idea what he was supposed to be doing at the new job, so he would slip out of his office and hide in the company's garage for three hours at a time.  (Id.)  After he was

9

discharged, Plaintiff filed for unemployment benefits. (R. at 241.)

At the hearing, Plaintiff testified that he is no longer able to do his former jobs. (R. at 242.) Specifically, Plaintiff said his fear of going out, fear of people, and his general inability to talk to people due to nerves prevent him from working. (Id.) Additionally, he testified that he can't predict his moods or behavior and that periods of anxiety can cause him to become "violently ill" and vomit. (Id.) Finally, Plaintiff testified that he will start weeping sometimes and then burst into hysterical crying and that this problem was worse in 2002 than at the time of the hearing. (Id.)

Finally, Plaintiff testified about his history of psychiatric care. He met with Dr. Percival P. Levinson in 1998 for therapy (at the hearing, Plaintiff mistakenly said this occurred in 2001). Plaintiff saw Dr. Levinson for six or seven months before Dr. Levinson had health problems and eventually passed away. (R. at 243-44.; Pl. Br. at 5.) Plaintiff did not find another therapist until August 2003, when he started seeing Dr. Joyce Williams. (R. at 243.) However, during all of this time, Plaintiff saw his family doctor, Dr. Weems, who treated Plaintiff for anxiety and depression. (R. at 244.) When asked at the hearing why Plaintiff waited a year after Dr. Levinson stopped seeing patients to find another therapist, Plaintiff

replied that he tried to avoid therapy, not wanting to believe that he was "actually crazy." (Id.)

    2. Medical Reports

Plaintiff submitted medical and psychiatric records from five different doctors. The medical reports indicate consistent medical diagnosis of Plaintiff's mental disorders, but some disagreement as to severity.

Plaintiff submitted medical records from Dr. Percival Levinson, who treated Plaintiff for his psychological conditions in 1998. (R. at 119-23.) On October 28, 1998, Dr. Levinson indicated that Plaintiff was under his care for a major depressive disorder and was disabled from working. (R. at 123.) On December 2, 1998, Dr. Levinson diagnosed Plaintiff with major depression, obsessive compulsive disorder, and a panic disorder. (R. at 119, 122.) The records state Plaintiff suffered from "a serious emotional disorder that temporarily is rendering the patient disabled" and that Dr. Levinson believed the Plaintiff could not work. (Id.) As a result of the disorders, the records indicate Plaintiff had problems with concentration and goal-directed thinking, severe fatigue, suicidal ideations, and poor self-esteem. (R. at 120.) Dr. Levinson recommended psychotherapy along with anti-depressants and anti-anxiety medication. (R. at 121.)

Dr. Donald B. Weems, Jr., M.D., treated Plaintiff throughout

the contested period and, in 2003, Dr. Weems filled out a disability determination report.  (R. at 131-40.)  Dr. Weems indicated he has treated Plaintiff since 1995 and that Plaintiff has a history of "depression, long term use of high-risk medication, panic attacks, phobic fears, post-traumatic stress disorder, and bi-polar disorder."  (R. at 131.)  Dr. Weems opined that Plaintiff's mental condition had its onset in 1989, including panic attacks with rage and paranoia.  (R. at 136.)  After initially diagnosing Plaintiff with panic attacks, Dr. Weems sent Plaintiff to a psychiatrist.  (R. at 132.)  Dr. Weems' opinion indicates Plaintiff has limited ability to travel, hear, speak, and handle objects due to marked mental changes, and that Plaintiff is "mentally unable to work" due to a "marked phobia."  (Id.)  Additionally, Dr. Weems' report states Plaintiff was prescribed Paxil, but only showed a fair to poor response.  (Id.)

On July 31, 2003, Plaintiff walked into the Kennedy Memorial Hospital emergency room and stated, "I need help."  (R. at 141-57.)  Doctors at the hospital diagnosed Plaintiff with adjustment disorder.  (Id.)  Plaintiff was discharged with instructions to receive follow-up care.  (R. at 148.)  When Plaintiff saw Dr. Weems on August 12, 2003 (R. at 131), Dr. Weems described Plaintiff as "feeling better but very nervous because of driving over here."  (R. at 135.)

In 2003, Plaintiff started seeing a therapist for his severe

panic attacks and underwent psychiatric evaluation.  In September 2003, Plaintiff initiated treatment with Shannon Rose for his severe panic attacks.  (R. at 160.)  Ms. Rose noted that Plaintiff suffers from severe panic attacks, but is able to leave the house.  (Id.)  Additionally, Ms. Rose states Plaintiff did not appear anxious in appointments and showed signs of improvement.  (Id.)  In October of 2003, Dr. Pedro Garcia at South Jersey Behavioral Health Resources evaluated Plaintiff's mental condition.  (R. at 158-59.)  Dr. Garcia's records indicate Plaintiff was taking several psychotropic medications and had a GAF score of 50[2].

### 3. ALJ Findings

ALJ Shoemaker found Plaintiff was not disabled prior to July 31, 2003 because there was no objective medical evidence of Plaintiff's mental impairments prior to August 2003.  (R. at 19-20.)  At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 20, 2002.  (R. at 15, 19.)  At Step Two, the ALJ first found Plaintiff's coronary artery disease constituted a severe impairment as of June 20, 2002 and the ALJ continued the sequential analysis of the

---

[2] A Global Assessment of Functioning score of 50 corresponds to "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000).

13

coronary disease's impact on Plaintiff's ability to perform work. However, in examining Plaintiff's mental disorders at Step Two, the ALJ found they were non-severe impairments prior to July 31, 2003.[3]  As a result, the ALJ stopped the sequential analysis for Plaintiff's mental disorders at Step Two.  Through the analysis of Plaintiff's coronary disease at Step Three, Four, and Five, the ALJ and found Plaintiff was "not disabled" between June 20, 2002 and July 31, 2003.

**III. Discussion**

In finding Plaintiff's mental impairments to be non-severe prior to July 31, 2003, the ALJ considered medical evidence in the record.  However, in assessing the severity of Plaintiff's mental disorders between June 20, 2002 and July 31, 2003, the ALJ did not request a medical expert to help determine the onset of disability.  Instead, he relied on the medical evidence available prior to 1998 and after July 31, 2003.  Plaintiff asks this court to reverse the ALJ's finding of no disability during the period at issue based on two arguments: 1) the ALJ erred by failing to

---

[3] The ALJ's administrative findings and administrative opinion appear to be in conflict at Step Two.  From the language of the administrative findings, it is unclear whether the ALJ intended to find Plaintiff's impairments severe or non-severe. See Section III infra p. 15-16.  For the purposes of this appeal, this Court will consider Plaintiff's argument against the assumption that the ALJ intended to find Plaintiff's mental disorders non-severe.

request a medical expert to determine the onset date of Plaintiff's disability (Pl.'s Br. at 14-20), and (2) the ALJ failed to properly determine whether the plaintiff suffers a severe impairment (Pl.'s Br. at 20-21).

Before addressing either argument, this Court finds reason to remand the ALJ's decision due to inconsistencies in the Administrative findings. Specifically, the ALJ's Step Two finding contradicts the Step Two reasoning within the ALJ's opinion. In his administrative findings for Step Two, the ALJ wrote that the "claimant's anxiety disorder and bipolar affective disorder <u>are</u> 'severe' prior to July 31, 2003, but before." (R. at 19.) (emphasis added). However, within his opinion, the ALJ's Step Two analysis states that the Plaintiff's mental disorders were "<u>non-severe</u> prior to July 31, 2003." (R. at 16.) (emphasis added). Furthermore, immediately before the findings, the ALJ's opinion clearly stated: "As of July 31, 2003[,] but not before, the claimant was 'disabled'." (R. at 19.)

Accordingly, it is likely that, in making his administrative findings, the ALJ meant to state that Plaintiff's mental disorders were "non-severe" prior to July 31, 2003. The meaning of the ALJ's finding can be determined from his own characterizations of the results of his analysis. If this were the only difficulty, the Court would not perceive a need to remand for clarification. However, others matters require

15

remand, for reasons next discussed.  This Court will next consider the substance of Plaintiff's claim that the ALJ was required to utilize a medical expert to determine the onset date of disability, and that the ALJ's determination of a non-severe mental impairment is not supported by the record.

> A.   Whether the ALJ was Required to Consult a Medical Expert to Determine the Onset of Plaintiff's Disability.

Plaintiff argues the ALJ erred in determining the disability onset date as July 31, 2003 without consulting a medical expert. (Pl.'s Br. at 14-20.)  According to Plaintiff, medical expert testimony is required here to infer the date of onset for Plaintiff's slowly progressing mental disorders because no medical records exist for the time between June 20, 2002 and July 31, 2003.  (Pl.'s Br. at 19.)  Plaintiff argues that SSR 83-20, 1983 WL 31249 (2006) and the Third Circuit's holdings in Newell v. Comm'r of Soc. Sec., 347 F.3d 541 (3d Cir. 2003) and Walton v. Halter, 243 F.3d 703 (3d Cir. 2001) impose this requirement. (Id.)  In response, Defendant argues SSR 83-20 only mandates a medical expert when inadequate medical records exist, and that in this case, medical records from August 2004 are sufficiently contemporaneous for the ALJ to properly determine the onset date of Plaintiff's disability.  (Def.'s Br. at 8-11.)

The Court agrees with Plaintiff's argument that SSR 83-20 requires an ALJ to request a medical expert where a plaintiff

16

alleges a slowly progressing mental disorder and adequate medical records do not exist.  The introduction to SSR 83-20 provides, in relevant part:

> In many claims, the onset date is critical; it may . . . even be determinative of whether the individual is entitled to or eligible for any benefits. . . . Consequently, it is essential that the onset date be correctly established and supported by the evidence, as explained in the policy statement.

SSR 83-20, 1983 WL 31249, at *1.

This is especially true for disabilities of "nontraumatic origin," where onset involves consideration of the plaintiff's allegations, work history, medical and other evidence concerning the severity of the plaintiff's impairment.  Id. at *2.  The ALJ should consider medical evidence "as the primary element in the onset determination."  Id.  Where adequate medical records are not available to determine an onset date, it may be possible to reasonably infer the onset date occurred "some time prior to the date of the first recorded medical examination."  Id. at *3.  Thus, SSR 83-20 advises that the ALJ "should call on the services of a medical advisor when onset must be inferred."  Id.  This is expressly so where the plaintiff has earlier received treatment for a severe, chronic mental condition, as in the present case.

When determining a disability onset date, the ALJ must rely on a "legitimate medical basis."  Walton, 243 F.3d at 708 (quoting SSR 83-20).  Based on the medical evidence, it may be possible in some cases "to reasonably infer that the onset of a

17

disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." Id.  Where it is necessary to infer an onset date from the medical records, the ALJ should request that a medical advisor infer the onset date to ensure the onset date is determined on a legitimate medical basis.  Newell, 347 F.3d at 548-49 (remanding where ALJ did not use medical expert to infer onset date when plaintiff's liver disease, diabetes and neuropathy reasonably could have become disabling prior to the medical exam).  In Walton, the plaintiff alleged disability on the basis of slowly progressing bi-polar manic depression commencing years before the administrative hearing.  See 243 F.3d at 705-06.  The ALJ set an onset date based on the recollections of the plaintiff's psychiatrists, who did not retain their medical records from the relevant period. Id. at 707-08.  The Third Circuit held the ALJ's findings were unsupported by adequate medical records and remanded the case for the ALJ to appoint a medical expert to infer the onset date as required by SSR 83-20.  Id. at 709-10.

    Here, as in Walton and Newell, the ALJ erred because he determined the disability onset date without adequate medical records and without the assistance of a medical expert.  Here, no medical evidence exists in the record between 1998, when Dr. Levinson declared the Plaintiff unable to work due to phobia, and 2003, when Plaintiff was observed by Kennedy Memorial Hospital,

18

except for ongoing treatment by his medical doctor for depression and panic disorder.  The absence of <u>psychological</u> medical records in the record for the five years between 1998 and 2003, prohibits any reasoning that the ALJ had adequate medical evidence to evaluate the severity of Plaintiff's mental state for the period at issue: June 20, 2002 to July 31, 2003.  In support of the non-severe decision, the ALJ refers to medical evidence from physical health evaluations in 2001, examining Plaintiff's heart condition.  Additionally, Plaintiff continued to see his general doctor, Dr. Weems, between 1998 and 2003.  However, neither the cardiac disease evaluations, nor Dr. Weems' general treatment provide any opinion or evidence about Plaintiff's mental state during this period.  As a result, the ALJ made inferences about the severity of Plaintiff's mental impairments without the benefit of any psychological medical evidence to support the conclusion that Plantiff's mental disorder was non-severe prior to July 31, 2003.  Such a conclusion about the severity of serious, slowly progressing mental disorders during a five year gap in medical records is prohibited by SSR 83-20 and the Third Circuit's holding in <u>Walton</u> and <u>Newell</u>.

Therefore, because the ALJ found the Plaintiff's mental impairments were severe as of July 31, 2003 (and not before, as Plaintiff claims) without adequate medical records, this Court will remand with instructions to the ALJ to have a medical expert

assist in determining the onset date of Plaintiff's disability by reasonably inferring the severity and impact of Plaintiff's mental disorders between July 20, 2002 and July 31, 2003.

    B.    <u>Whether the ALJ Properly Determined that Plaintiff's Mental Impairments Were Non-Severe</u>

Due to the Court's remand of this case to properly determine an onset date, it is not possible to evaluate whether the ALJ properly determined that Plaintiff's mental impairments were non-severe. The medical expert's opinion as to onset date would form part of the basis for a Step Two analysis. Therefore, this Court cannot evaluate the ALJ's Step Two analysis and will not do so without the information which will be provided by the medical expert's opinion on remand.

**IV.**    **CONCLUSION**

For the reasons stated above, the Commissioner's finding that Plaintiff was not disabled prior to July 31, 2003 will be vacated and remanded to the Administrative Law Judge to determine an onset date of disability with the assistance of a medical expert. The accompanying order will be entered.

**March 22, 2007**                             **s/ Jerome B. Simandle**
DATE                                          JEROME B. SIMANDLE
                                                United States District Judge